IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SUSAN SIDEMAN and MARK SIDEMAN, | § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | CIVIL NO. 5:17-CV-00023-OLG |
| FARMERS GROUP, INC., a Nevada Corporation, | | |
| Defendant. | | |

## MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Farmers Group, Inc. ("Farmers") files this Motion for Judgment on the Pleadings pursuant to Rule 12(c), and in support thereof would show the following:

## INTRODUCTION

On or about April 11, 2016, a hail storm marred (or scratched) the metal roof on the home of Plaintiffs Susan Sideman and Mark Sideman ("the Sidemans" or "Plaintiffs"). The Sidemans' claim was denied because their policy contained an endorsement excluding marred roofing. Plaintiffs allege in this lawsuit that Farmers deceived them three years before the storm by misrepresenting the scope of coverage for hail damage under their homeowner's policy. Because Plaintiffs admit they received the endorsement to their policy excluding marring of metal roofs in 2013, they have failed to state a claim for misrepresentation or deception.

Separately, their claim is barred by limitations, because their cause of action accrued in 2013, when they received both the exclusion at issue and the declaration page for their policy stating that the exclusion applied. Plaintiffs did not file suit until January 13, 2017, well past the two-year statute of limitations.

For both or either of these reasons, Farmers is entitled to judgment on the pleadings, and the Sidemans' Complaint should be dismissed with prejudice.

## SUMMARY OF FACTUAL ALLEGATIONS

The Sidemans were insured until 2013 under a Farmers Texas Family Homeowners Policy ("TFHP") issued by Texas Farmers Insurance Company ("Texas Farmers").[1]  Complaint [#1] ¶ 10.  In June 2013, the Sidemans received notice that their TFHP policy was being canceled.  *Id.* ¶ 11.  In its place, they were sent an offer package for a Farmers Next Generation Homeowners Policy ("Next Gen Policy").  *Id.*  The offer package included an endorsement to the Next Gen Policy that specifically excluded marring (denting or scratching) of a metal roof by a covered peril.  *Id.* ¶¶ 13.  The endorsement is prominently titled "Exclusion of Marring of Metal Roof Materials" (hereafter "Metal Marring Exclusion").  *See* Exhibit "A-1," attached hereto, p. 2.[2]

Plaintiffs admit their April 2016 hail claim was denied because of the Metal Marring Exclusion, and do not challenge that coverage determination.  *See generally id.*  Instead, Plaintiffs sole theory of misconduct is that certain statements in their 2013 offer package were deceptive because they misrepresented the scope of hail coverage provided by the Next Gen

---

[1] Plaintiffs' allegations are taken as true solely for purposes of this Rule 12(c) motion.  *See* WRIGHT & MILLER, Judgment on the Pleadings—Allegations Admitted Only for Purposes of Motion, 5C FED. PRAC. & PROC. CIV. § 1370 (3d ed.) ("As is true in other motion contexts, these implied admissions are effective only for purposes of the motion and do not in any way bind the moving party in other contexts of the litigation or constitute a waiver of any of the material facts that will be in issue if the motion addressed to the pleadings is denied."); *Romero v. Frank's Casing Crew & Rental Tools, Inc.*, 229 F. Supp. 41, 43 (W.D. La. 1964), *aff'd*, 342 F.2d 999 (5th Cir. 1965), *declined to follow on other grounds Billiot v. Stewart Seacraft, Inc.*, 382 F.2d 662, 664 (5th Cir. 1967) ("The defendants have not admitted that the structure upon which Romero was employed was a submersible drilling barge nor have they admitted that it was a vessel, but for the purpose of the motion for judgment on the pleadings and the motion to dismiss for failure to state a claim the allegations of the petition in this suit are taken as true.").

[2] Exhibits A-1 and A-2 are attached to Exhibit A, the Declaration of Cheryl Jordan-Herr, who authenticates the documents.

Policy and therefore violated the Texas Insurance Code.  *See* False Information and Advertising § 541.052; Misrepresentation of Insurance Policy § 541.061(1)–(3); Complaint at ¶¶ 34–35.

While Plaintiffs deny receiving a copy of the entire Next Gen Policy, they admit that on June 4, 2013, they received the 39-page offer package pursuant to which they purchased a Next Gen Policy:

> 11. **On or about June 4, 2013, FGI sent Plaintiffs a 39-page document** notifying them that their TFHP POLICY was being "non-renewed" at the end of its policy period, and that a new TFIC Farmers Next Generation HO Policy, Number 96912-19-03 was being offered in its place.

Complaint [#1] ¶11 (emphasis added).  They further admit that the offer package included the Metal Marring Exclusion itself:

> 13. FGI sent an almost identical 37-page packet to Plaintiffs' long-time Farmers agent, Michael Woods, which likewise did not include a copy of the new Next Generation HO policy, nor did it include a copy of TX-184, **an "Exclusion Of Marring of Metal Roof Materials" that *had* been included as the 25th page in the 39-page packet sent to Plaintiffs.**

*Id.* at ¶ 13 (emphasis added).  The offer package also included the declarations page for the new policy.  *See* Exhibit A-1, p. 1.  The declarations page listed the amount of premium the Sidemans would be required to pay, the value for which their home would be insured, the deductibles that would be applicable to different types of claims, and the four endorsements that would apply to their Next Gen Policy should they choose to accept the offer and pay the premium.  *Id.*  The Metal Marring Exclusion, a full copy of which was included in the offer package, was listed on the declarations page as applying to Plaintiffs' Next Gen Policy.  *Id.*  On these alleged facts and documents, Farmers is entitled to judgment on the pleadings under Rule 12(c).

**ARGUMENT & AUTHORITIES**

**I.** **Legal Standard**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion brought pursuant to Rule 12(c) is designed to dispose of cases where judgment on the merits of the case can be determined by looking to the substance of the pleadings and any judicially noticed facts. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter,* 313 F.3d 305, 312 (5th Cir. 2002). This includes documents the plaintiff refers to or relies on in his complaint, even if they are not attached to the complaint. *Id.* at 313 (finding that district court properly looked at documents "referred to" but not attached to the complaint); WRIGHT & MILLER, Judgment on the Pleadings—In General, 5C FED. PRAC. & PROC. CIV. § 1367 (3d ed.) ("[J]udgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, ***matters incorporated by reference in the pleadings***, ***whatever is central or integral to the claim for relief or defense***, and any facts of which the district court will take judicial notice.") (emphasis added).

In considering a Rule 12(c) motion, the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *See Hughes v. Tobacco Institute, Inc.,* 278 F.3d 417, 420 (5th Cir. 2001). "[D]ismissal on the pleadings is appropriate if . . . the facts stated in plaintiff's complaint affirmatively negate its cause of action." *See Long Range Systems, Inc. v. NTN Wireless Communications, Inc.,* No. 3-03-CV-0598-L, 2003 WL 21283194, at *1 (N.D. Tex. May 28, 2003).

Applying these standards to this case, the Sidemans' Complaint fails to state a cause of action against Farmers—in fact, the pleaded facts actually negate their asserted claim. Therefore, the Complaint should be dismissed with prejudice.

4

## II.     Plaintiffs Have Failed to State a Claim for Violation of Chapter 541 of the Insurance Code

The basic rule is clear: "In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA [or Insurance Code]." *See Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) (quoting *Sledge v. Mullin*, 927 S.W.2d 89, 94 (Tex. App.—Fort Worth 1996, no writ)).

"[T]he insured has a duty to read and be familiar with the terms of his own insurance policy." *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 792 (Tex. App.—Dallas 2011, no pet.) (citing *Heritage Manor of Blaylock Properties, Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)); *Manion v. Security Nat'l Ins. Co.*, No. 13–01–248–CV, 2002 WL 34230861, at *3 (Tex. App.—Corpus Christi Aug. 15, 2002, no pet.)). Accordingly, even where the insured denies reading the policy, he is "bound by the terms of [his] policy and [is] charged with knowledge of its conditions and coverage." *Id.* (citing *Heritage Manor of Blaylock Properties*, 677 S.W.2d at 691).

Accordingly, "[a] claim for misrepresentation cannot stand when the party asserting the claim is legally charged with knowledge of the true facts." *Id.* at 798 (emphasis added). Here, the Sidemans are charged with knowledge of the Metal Marring Exclusion, which they admit receiving. Accordingly, there can be no misrepresentation or violation of the Insurance Code as a matter of law.

### A.   None of the Facts the Sidemans Plead Is An Affirmative Misrepresentation That They Had Coverage For Metal Roofs Marred By Hail

The Sidemans claim that Farmers committed "deception" by making the following "written misrepresentations" in their offer package:[3]

> (1) it stated that the Next Gen Policy was included in the package, but the entire Next Gen Policy was not included in the package (Complaint ¶ 12–14);
>
> (2) it advised them to contact their Farmers agent, review the items and conditions of the Next Generation policy, and included a Summary Policy comparison "which briefly summarizes some but not all of the differences between the TFHP and the Next Generation policies" (*Id.* ¶ 15);
>
> (3) it advised them to "review the policy forms and endorsements for details" because the "policy contract takes precedence over this summary comparison" (*id.* ¶ 16); and
>
> (4) a one-page Summary Plan comparison between the old and new policies "indicated" that the coverage for hail was "the same," *id.* ¶ 17.

These are not misrepresentations. At worst for Plaintiffs, they are clear instructions to review the terms of the policy itself to learn the details of the coverage being offered. At best for them, the "indication" in the Summary Plan comparison is ambiguous.

Yet an ambiguous statement regarding insurance coverage provides no basis for a misrepresentation claim under Texas law. As the Fifth Circuit explains, a claim for misrepresentation of insurance coverage requires an "unambiguous, false statement." *See Tolbert ex rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 657 F.3d 262, 268 (5th Cir. 2011) ("Tolbert has failed to cite, and we have not found, any basis under Texas law for equating

---

[3] The Sidemans also quote a letter that Farmers allegedly caused to be sent to the Department of Insurance in 2011, regarding when the Metal Marring Exclusion would be added. Complaint ¶¶ 27–32. They do not allege they relied on, or were even aware, of the contents of this letter at any point prior to this lawsuit. The letter is irrelevant to the claims asserted in this lawsuit. Moreover, there were no misrepresentations made to TDI. As TDI was informed, the "'endorsement w[as] placed on new business policies,'" and "'[was] not attach[ed] to any existing policies with metal roofs.'" *Id.* ¶ 28. The Sidemans admit their prior policy was cancelled and they were offered a new one. *Id.* ¶ 10. TDI "approved FGI's proposed 'marring exclusion' for Next Generation HO products on January 10, 2012,"—well before the Sidemans purchased their own Next Gen Policy with the Metal Marring Exclusion included in the offer package and listed on the declarations page of their new policy. *Id.* ¶ 29.

6

an *ambiguous statement about benefits* payable under a policy of insurance with an *unambiguous, false statement* or representation about the nature of those benefits.") (emphasis added). The reason for the rule is because when faced with "an ambiguous description of benefits or coverage, a 'reasonably prudent person' could not conclude that there was coverage when the ambiguous document expressly states that the policy governs any conflicting description of coverage." *Id.* at 269–70.

And importantly, any possible ambiguity was cleared up in the offer package itself by the inclusion of the Marring Metals Exclusion and its listing on the declarations page of Plaintiffs' new Next Gen Policy. Complaint [#1] ¶¶ 11, 13; Exhibit A-1.[4] The exclusion clearly states: "However, we do insure . . . hail, except **marring** of **metal roof materials** . . ." *Id.*, p. 2 (emphasis in original). And the declarations page likewise clearly states that the Marring Roof Exclusion applies if Plaintiffs accept the offer and purchase the new policy for the premium listed.

If there is one document a prospective purchaser is going to review when offered a new insurance policy, it is the declarations page, which lists the amount of insurance being purchased, the cost, the deductibles, the property covered, and numerous other key facts. *See* Exhibit A-1, p. 1. Here, the declarations page lists which endorsements will apply, and the title of the endorsement at issue is crystal clear: Exclusion of Marring of Metal Roof Materials. *Id.* And of course the offer package even included the actual endorsement itself, as Plaintiff freely admits. *Id.*, p. 2. Taking all of the Sidemans' allegations as true, their claim of misrepresentation or deception fails as a matter of law.

---

[4] As previously stated, the Court can take notice of these key documents from the offer package as they are central to Plaintiffs' claims and referenced and relied upon in their Complaint. *See Great Plains Trust Co.*, 313 F.3d at 313; WRIGHT & MILLER, Judgment on the Pleadings—In General, 5C FED. PRAC. & PROC. CIV. § 1367 (3d ed.).

Moreover, the Sideman's purported ambiguity – that the "Summary Policy comparison" in the package "indicated" hail coverage would be "the same" between the old and new policies – is not supported by that document. *See* Exhibit A-2. The comparison has a half-page chart at the top of the page titled "property perils" and says that placement of an "X" next to a peril "means that the policy includes this peril." *See* Exhibit A-2. Indeed, the Sidemans' old and new policies both include coverage for the peril of hail. The Marring Metals Exclusion says "we do insure . . . hail" before explaining the limitations to that insurance. *See* Exhibit A-1, p. 2. And right below the chart in the Summary Policy comparison, on the very same page, are several disclosures including "[c]overage may not exist for a particular claim even if there is no exclusion," "the peril itself may limit coverage," whether a particular claim is covered "depends on a number of factors" including "all policy provisions," and that the document "summarizes some of the Property exclusions only and is not a detailed coverage guide." *See* Exhibit A-2.

Even if the Sidemans had ***never*** been provided the applicable exclusion, the Summary Policy comparison could not sustain a claim for misrepresentation or deception. All the more so under the facts here, where the same offer package containing the comparison document also included a declarations page, stating the Metal Marring Exclusion applied, and containing an actual copy of the exclusion. Exhibit A-1, A-2.

The Sidemans fail to state a misrepresentation claim.

**B.    Any Failure to Give the Sidemans A Copy of the Policy Is Irrelevant**

The Sidemans make much of the fact they claim to have never received a copy of their new policy. Putting aside the truth of the allegation as one must for a judgment on the pleadings, the allegation is irrelevant. Case law is clear that a misrepresentation claim cannot be supported merely with a policyholder's allegation that he never received a copy of the policy.

The Texas Supreme Court decided over thirty years ago that a policyholder's failure to read *or receive* a copy of a policy is irrelevant to misrepresentation or deception claims. The case, notably, was filed by another homeowners insurance policyholder of Texas Farmers Insurance Company ("Texas Farmers," the same insurer that issued the Sidemans' Next Gen Policy). In *Parkins v. Texas Farmers Insurance Company*, the homeowner alleged the following:

- Farmers represented it would "insure a dwelling he owned in the event of fire";
- He never received a copy of the homeowners policy;
- His coverage was renewed thereafter annually;
- Farmers issued him a policy which carried an exclusion that the premises covered must be owner-occupied; and
- Coverage was denied when the house burned because he had rented it.

645 S.W.2d 775, 775-76 (Tex. 1983). Based on these facts, the homeowner claimed that Farmers Texas misrepresented his coverage and therefore violated the DTPA.

The Texas Supreme Court disagreed, holding that "Parkins nowhere shows that [Texas] Farmers ever assured him of coverage against fire loss *under the circumstances present here* or they would issue a particular kind of policy." *Id.* at 777 (emphasis added). In other words, Parkins could point to no "unambiguous, false statement" that he would have coverage even if he ceased occupying the home. *See Tolbert*, 657 F.3d at 268. Farmers said it would provide insurance for a particular peril (fire) and it did so.

Similarly, the Sidemans have no "unambiguous, false statement" that they would be covered for marring to their metal roof by hail. Just as in *Parkins*, Farmers said it would provide insurance for a particular peril (hail) and it did so—subject to the exclusion, which Plaintiffs admit they received. As in *Parkins*, the fact policyholders have exclusions in their policy they

9

have never reviewed, or even received, is irrelevant. *Parkins*, 645 S.W.2d at 775-76. Texas courts continue to enforce this rule. *See, e.g., Nwaigwe v. Prudential Prop. & Cas. Ins. Co.*, 27 S.W.3d 558, 560 (Tex. App.—San Antonio 2000, pet. denied) (rejecting plaintiff's attempt to characterize his complaint as one of failure to disclose an exclusion from coverage).

From a plaintiff's perspective, the facts in *Parkins* were stronger than they are here because the policyholder never received a copy of the owner-occupied exclusion. Still, he was held to its terms and his misrepresentation and DTPA claims dismissed. Here, the exclusion was both provided in the offer package and listed in the declarations page of the Sidemans' Next Gen Policy. While Texas law imputes knowledge of all the terms and conditions of a policy on policyholders whether they read or receive them or not, Plaintiffs have asserted a claim based on their own selective reading of only parts of the documents that were plainly placed before them. Texas law recognizes no such claim.

### III. Plaintiffs' Claims are Time-Barred

Plaintiffs assert two claims for violation of the Texas Insurance Code. The statute of limitations applicable to their claims states:

> A person must bring an action under this chapter before the second anniversary of the following: (1) the date the unfair method of competition or unfair or deceptive act or practice occurred; or (2) the date the person discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred.

TEX. INS. CODE § 541.162(a). The purported "misrepresentations" on which Plaintiffs base their claims were received by them on or about June 4, 2013. *See* Complaint [#1] ¶¶11, 13. They did not file this suit until January 13, 2017. Recognizing they failed to file suit within two years of the alleged wrongdoing, Plaintiffs argue they "had no reason, in the exercise of reasonable diligence, to discover prior to April 11, 2016 (the date of the hail storm) that FGI's
10

representations, acts and/or omissions had occurred." *Id.* ¶ 36.  But under the facts alleged, Plaintiffs' claims are barred by limitations as a matter of law.

Plaintiffs admit they received the metal marring exclusion in 2013 as part of the very offer package that contained the statements of which they complain.  *See* Complaint [#1] ¶¶11, 13.  They likewise admit they were "encouraged to and should take the time to review the items and conditions of the Next Generation policy."  *Id.* ¶ 15.  As a matter of law, a person exercising reasonable diligence would have discovered any misrepresentation in the offer package in June 2013, when they received it.

First, to the extent there was a "misrepresentation" because the insurance policy itself was not contained in the offer package, Plaintiffs certainly knew that the moment they opened their mail.  Second, as discussed above, Texas law imputes on policyholders knowledge of all of the terms and conditions of their insurance policies.  That means the Sidemans are charged as a matter of law with knowing in 2013 that their new policy contained an exclusion for marring.  That is why numerous decisions hold that an insured's cause of action for misrepresentations about policy coverage accrues when the policy is issued.  *See Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 748 (W.D. Tex. 2015) ("[Plaintiff's] state law claims based on representations made in August 2006 and June 2008 accrued at the latest on the original purchase date for the Policy [August 2008] and are barred by limitations."); *Khoei v. Stonebridge Life Ins. Co.*, No. H–13–2181, 2014 WL 585399, at *7 (S.D.Tex. Feb. 14, 2014) (claims that insurer misrepresented policy coverage in selling policy accrue when policy is issued); *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H–06–2736, 2009 WL 890398, at *16 (S.D. Tex. Mar. 30, 2009) (cause of action based on insurer's misrepresentation or failure to disclose in connection with sale of insurance policy accrues when policy is issued); *Rangel v. Progressive Cnty. Mut. Ins. Co.*, 333 S.W.3d 265, 269

(Tex. App.—El Paso 2010, pet. denied) (claims based on alleged misrepresentations concerning extent of insurance coverage accrued when plaintiffs purchased the policy); *Mauskar v. Hardgrove*, No. 14–02–00756–cv, 2003 WL 21403464, at *3 (Tex. App. —Hous. [14th Dist.] June 19, 2003, no pet.) ("Had [plaintiff] read the policies at the time he purchased them, he would have known that the policies were not going to meet his alleged pay-out expectations").

Finally, the Court should not ignore the fact that Plaintiff Mark Sideman is a licensed Texas attorney.[5] Exhibit B. He knows better than most how to read insurance policies, endorsements and declaration pages. Putting aside the fact he knew how to request his policy if in fact it was somehow omitted from his offer package, he had all of the information he needed in 2013 to know that hail that merely marred metal roofs (and did not puncture it) was being excluded from his new policy. He also had all the information he needed in 2013 to determine whether he had any claims under the Texas Insurance Code—the offer package along, with his new declarations page and the copy of his Metal Marring Exclusion, made it clear that marring of a metal roof by hail was excluded from the hail coverage.

## CONCLUSION

WHEREFORE PREMISES CONSIDERED, Farmers requests that the Sidemans' Complaint be dismissed with prejudice, that judgment for Farmers issues, and for any other relief Farmers may be entitled to in law or equity.

---

[5] Farmers asks the Court to take judicial notice of the fact that plaintiff Mark Sideman is an attorney, licensed to practice in the state of Texas since September 14, 1966. Ex. B., State Bar of Texas, Find a Lawyer, https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=210938; *Darby v. Johnson*, 176 F.3d 479 (5th Cir. 1999) (taking judicial notice of dates that habeas petitioner's counsel was licensed to practice law in Texas); *Buscaglia v. Fiddler*, 157 F.2d 579, 582 (1st Cir. 1946) (taking judicial notice that plaintiff was an attorney admitted to court's own bar).

Respectfully Submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ M. Scott Incerto*_____
M. Scott Incerto (State Bar No. 10388950 )
Adam T. Schramek (State Bar No. 24033045)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Tel: 512.474.5201
Fax: 512.536.4598
scott.incerto@nortonrosefulbright.com
adam.schramek@nortonrosefulbright.com

COUNSEL FOR DEFENDANT FARMERS GROUP, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2017, in accordance with the Federal Rules of Civil Procedure, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

        */s/ M. Scott Incerto*
        M. Scott Incerto