IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SUSAN SIDEMAN and MARK SIDEMAN, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL NO. 5:17-CV-00023-OLG |
| § | |
| FARMERS GROUP, INC.,  a Nevada § | |
| Corporation, § | |
| § | |
| Defendant. § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Farmers Group, Inc. ("FGI") files this Motion for Summary Judgment on all claims asserted by Plaintiffs Susan Sideman and Mark Sideman ("the Sidemans" or "Plaintiffs") and in support thereof, respectfully shows the Court the following:

## INTRODUCTION

On or about April 11, 2016, a hail storm marred (or scratched) the metal roof on Plaintiffs' home.  The Sidemans' claim was denied because their policy contained an endorsement excluding this type of cosmetic damage.  Plaintiffs allege in this lawsuit that FGI deceived them three years before the storm by misrepresenting the scope of coverage for hail damage under their homeowner's policy.  FGI is entitled to summary judgment because: (1) Plaintiffs admit they received the endorsement to their policy excluding marring of metal roofs in 2013; and (2) at their depositions, ***Plaintiffs admitted they never read any of the statements by their insurer that they now claim were deceptive***.

Separately, their claim is barred by limitations, because their cause of action accrued in 2013, when they were offered and accepted their new Next Generation homeowners policy. The declarations page for their Next Gen policy identified the exclusion at issue, and a complete copy of the exclusion was included in the mailing. Plaintiffs did not file suit until January 13, 2017, well past the two-year statute of limitations.

For any of these three reasons, Farmers is entitled to summary judgment, and a judgment directing that the Plaintiffs take nothing on their claims.

## SUMMARY OF RELEVANT FACTS

Taking the undisputed facts in the light most favorable to the Plaintiffs, the Sidemans were insured until 2013 under a Farmers Texas Family Homeowners Policy ("Family Home Policy") issued by Texas Farmers Insurance Company ("Texas Farmers"). Complaint [#1] ¶ 10. In June 2013, the Sidemans received notice that their Family Home Policy was being discontinued (non-renewed). *Id.* ¶ 11; Ex. A (Offer Packet) at PL 0025.[1] In its place, they were being offered a Farmers Next Generation Homeowners Policy ("Next Gen Policy"). Compl. ¶ 11; Ex. A at PL 0022–23. Because the two policies were significantly different, Texas Farmers included information in the Offer Packet highlighting some of the differences. Ex. A at PL 0022–23, PL 0038–42. Because marring to metal roofs would no longer be covered under the Next Gen Policy, a copy of the endorsement was provided to the Sidemans and the endorsement was listed on the declarations page. *Id.* at PL 0020 (Declarations Page); *id.* at PL 0043 (Metal Marring Exclusion Endorsement).

---

[1] There is no dispute that Exhibit A is a copy of the Offer Packet provided to the Sidemans. *See* Ex. A to Pls.' Response to Motion for Judgment on the Pleadings [#12-1] (Declaration of Michael Wood).

The endorsement is prominently titled "Exclusion of Marring of Metal Roof Materials" (hereafter "Metal Marring Exclusion") and explains that "marring of metal roof materials" is not covered.  *Id.* at PL 0043.  However, there is coverage where "hail causes a distinct and demonstrable actual hole or opening in the metal roof materials, or that results in the failure of the metal roof materials to perform its intended function."  *Id.*

Due to a technical glitch that was caused when the Sidemans' Agent made changes to the policy in a processing database, the Offer Packet did not include the full policy form.  *See* Declaration of Jayarethinam Antony, Ex. B.  However, it did include the declarations page and a copy of the Metal Marring Exclusion, as Plaintiffs admit.

The Sidemans accepted the offer by Texas Farmers of insurance under a Next Gen Policy, and duly paid the corresponding premium.  They continued to renew the Next Gen Policy each year thereafter.  Ex. C (2014 Renewal); Ex. D (2015 Renewal); Ex. E (2016 Renewal).

On April 11, 2016, a hail storm caused cosmetic dents to the surface of Plaintiffs' metal roof.  It also damaged a skylight, a vent on the roof, some windows, and an outdoor gas grill.  Ex. F (Adjustor's Estimate) at PL 0061–63, 70.  Water leaked into the home through the damaged skylight and the vent, but did not leak through any other part of the roof, and there is no dispute that the roofing material was not pierced or dislodged by the hail in any way that would undermine the roof's ability to keep water out of the Sidemans' home.  Ex. G (S. Sideman Depo) at 8:7–9:8; Ex. H (M. Sideman Depo) at 6:15–7:13; Ex. I (Claim Settlement Letter) at PL 0072, 76.

There is no dispute that Texas Farmers promptly adjusted the Sidemans' claim and made the proper coverage decision.  Indeed, Plaintiffs **have not sued their insurer, Texas Farmers**. While the adjuster was unaware of the metal marring exclusion when she inspected the home, she subsequently told Plaintiffs about it.  *Id.*

Plaintiffs' sole theory of liability is that FGI, a company that provides services to Texas Farmers, caused deceptive and misleading statements to be made to TDI and included in their 2013 Next Gen Policy Offer Packet that violated the Texas Insurance Code. *See* False Information and Advertising § 541.052; Misrepresentation of Insurance Policy § 541.061(1)–(3); Complaint at ¶¶ 34–35.

While Plaintiffs deny receiving a copy of the entire Next Gen Policy, they admit that on June 4, 2013, they received the 39-page Offer Packet pursuant to which they purchased a Next Gen Policy. Complaint [#1] ¶11. They further admit that the Offer Packet included the Metal Marring Exclusion itself. *See Id.* at ¶ 13.[2] The Offer Packet also included the declarations page for the new Next Gen policy. *See* Ex. A at PL 0020. The declarations page listed the amount of premium the Sidemans would be required to pay, the value for which their home would be insured, the deductibles that would be applicable to different types of claims, and the four endorsements that would apply to their Next Gen Policy should they choose to accept the offer and pay the premium. *Id.* The Metal Marring Exclusion, a full copy of which was included in the Offer Packet, was among those four exclusions listed on the declarations page. *Id.* In addition, when the Sidemans' Next Gen Policy was renewed in 2014, the declarations page again listed the Metal

---

[2]11. **On or about June 4, 2013, FGI sent Plaintiffs a 39-page document notifying them** that their TFHP POLICY was being "non-renewed" at the end of its policy period, and th**at a new TFIC Farmers Next Generation HO Policy, Number 96912-19-03 was being offered** in its place

. . .

13. FGI sent an almost identical 37-page packet to Plaintiffs' long-time Farmers agent, Michael Woods, which likewise did not include a copy of the new Next Generation HO policy, nor did it include a copy of TX-184, **an "Exclusion Of Marring of Metal Roof Materials" that _had_ been included as the 25th page in the 39-page packet sent to Plaintiffs.**

Complaint [#1] at ¶¶ 11, 13 (emphases added).

Marring Exclusion.   Ex. C (2014 Policy Renewal) at FGI000194.   On these alleged facts, admissions, and documents, Farmers is entitled to summary judgment.

Despite admitting that they were provided with the Metal Marring Exclusion, the Sidemans nevertheless claim in their Complaint that they relied on purportedly misleading or deceptive statements in the 39-page packet, and that they were somehow prevented from understanding the Metal Marring Exclusion because Farmers did not provide a copy of the complete Next Gen Policy in the packet.   Complaint [#1] ¶¶ 11–18.   However, at their depositions, the **Sidemans candidly and freely admitted that they <u>never read</u> any of the statements they now claim were misleading or deceptive**.   Susan Sideman further admitted she was able to understand the Metal Marring Exclusion, which she read for the first time at her deposition.   Ex. G (S. Sideman Depo) at 34:8–35:16.

While the Sidemans claim that the Metal Marring Exclusion was omitted from a version of the packet that was sent to their Agent, Michael Woods, they admitted at their depositions that from 2010 until after the hail storm in April 2016, they never contacted Mr. Woods.   Ex. G (S. Sideman Depo) at 39:25–40:4, 41:5–13; Ex. H (M. Sideman Depo) at 14:6–15.

## ARGUMENT & AUTHORITIES

### I.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a).   Rule 56 requires the moving party to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.   *Fontenot v. Upjohn Co.*, 780 F. 2d 1190, 1195 (5th Cir. 1986).   After the movant for summary judgment has met its burden, the non-movant then must establish that disputed issues of fact remain.   *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).   The non-movant must go beyond the pleadings

and by affidavit, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). An alleged fact dispute will not defeat the motion unless it is genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact only exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 890 (5th Cir. 2003).

## II.  **Plaintiffs' Misrepresentation Claims Must Be Dismissed Because They Have Admitted They Never Reviewed, Much Less Relied, On the Allegedly Deceptive Statements.**

Putting aside the issue of whether any of the statements over which Plaintiffs complain were deceptive, their claims under the Insurance Code must be dismissed because they have admitted they never reviewed, much less relied on, any of the statements. Hence, if any misrepresentations were made, they were not a producing cause of damages to Plaintiffs.

Plaintiffs have sued FGI, ***not their insurer***, for alleged violations of Texas Insurance Code Sections 541.052 and 541.061. Those provisions state:

> Sec. 541.052. FALSE INFORMATION AND ADVERTISING. (a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to make, publish, disseminate, circulate, or place before the public or directly or indirectly cause to be made, published, disseminated, circulated, or placed before the public an advertisement, announcement, or statement **containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance** or a person in the conduct of the person's insurance business.

> Sec. 541.061. MISREPRESENTATION OF INSURANCE POLICY. It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

> (1) making an ***untrue statement*** of material fact;

> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3)  making a statement in a manner that would *mislead a reasonably prudent person to a false conclusion of a material fact*;

(4)  making a material misstatement of law;  or

(5)  failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

(emphasis added).  Prohibited practices like these are subject to regulatory enforcement by the Insurance Commissioner.  *See, e.g.,* Tex. Ins. Code § 541.101 *et seq.*  Section 541.151 also provides a private right of action.  It states:

A person who sustains actual damages may bring an action against another person for those damages *caused by* the other person engaging in a [deceptive] act or practice: . . .

Tex. Ins. Code § 541.151(a) (emphasis added).  For a private right of action to exist, a person must establish the unfair practice – here, allegedly misleading statements in a mailing – caused damages. *See, e.g., McClelland v. Chubb Lloyd's Ins. Co. of Texas*, 5:16-CV-00108, 2017 WL 432814, at *7 (W.D. Tex. Jan. 30, 2017) (granting summary judgment on Section 541.061 claim where there was no evidence of causation).  Causation requires proof of reliance.  In particular, Section 541.151 requires "presenting evidence of proximate causation by Defendant and Plaintiff's reliance." *Wells v. Minnesota Life Ins. Co.*, No. 15-CV-00708, 2016 WL 7757390, at *6 (S.D. Tex. June 15, 2016) (citing *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 834 (Tex. 2009)).

The Court here does not need to consider *whether* the statements in the Offer Packet were deceptive since the Sidemans have admitted under oath that they **never read** any of the purportedly misleading statements, and indeed, never read any part of the Offer Packet until the day of their deposition.  Ex. G (S. Sideman Depo.) at 26:23–28:3; Ex. H (M. Sideman Depo.) at 10:6–9.

As a matter of law, they cannot establish reliance or proximate cause.  Indeed, Plaintiffs' complaint that the Offer Packet did not contain a full copy of the insurance policy rings particularly hollow given the fact they do not know what was even in the Offer Packet because they never read

it.  In fact, Susan Sideman (who both Sidemans agreed is the person in their household who decides what insurance to buy)[3] volunteered that she does not read or pay attention to letters from her insurer: "I don't remember it.  I don't pay attention to these things, this kind of thing here."  Ex. G (S. Sideman Depo.) at 19:7–8.

At her deposition, Susan Sideman reviewed each of the statements that her complaint alleges were deceptive and caused her damages.  *See Complaint* [#]¶¶ 11–18.  Ms. Sideman candidly admitted that she had never read any of them:

| Allegedly Deceptive Statement[4] | Plaintiffs' Testimony Regarding the Statement |
| --- | --- |
| "If you have any questions, please contact your Farmers agent listed on the Declarations page of your policy. Your agent will be happy to review your policy and coverages with you." | Q. And did you ever read that sentence before today?<br><br>A. No.<br><br>Ex. G (S. Sideman Depo.) at 30:6-16 |
| "If you have any questions regarding the changes made to your policy or any other insurance matter, please contact me." | Q. Do you recall ever seeing this letter before?<br><br>A. No.<br><br>Ex. G (S. Sideman Depo.) at 30:17-24 |
| "Enclosed in this package of materials you will find your new Farmers Next Generation Homeowners Policy (Next Generation policy) being offered. | Q. Do you recall ever reading this page or seeing this page before today?<br><br>A. No.<br><br>Ex. G (S. Sideman Depo.) at 32:14-15, 32:19-25 |
| "You are encouraged to and should take the time to review the items and conditions of the Next Generation policy. | Q. And you -- have you ever read that sentence before today?<br><br>A. No.<br><br>Ex. G (S. Sideman Depo.) at 32:14-15, 33:1-9 |

---

[3] *See* Ex. G (S. Sideman Depo.) at 42:16–22 ; Ex. H  (M. Sideman Depo.) at 14:3–5.

[4] The statements are those quoted in Plaintiffs' Complaint, are in turn quotes from the Offer Packet, Deposition Exhibit 6, which is contained in Exhibit A to this motion.

| | |
|---|---|
| Attached is a Summary Policy comparison which briefly summarizes some but not all of the differences between the TFHP and the Next Generation policies. If you have any questions about the differences…please contact your Farmers agent, who will be happy to assist you." | Q. Do you recall ever reading this page or seeing this page before today?<br><br>A. No.<br><br>Ex. G (S. Sideman Depo.) at 32:14-15, 32:19-25 |

Mr. Sideman likewise testified that he had never seen the Offer Packet, and therefore likewise cannot have relied on any of the above statements that the Sidemans' lawyers now claim were misleading.  Ex. H (M. Sideman Depo.) at 10:6–9.

And subjectively, when Susan Sideman finally read the Metal Marring Exclusion for the first time during her deposition, she admitted she could understand it. Ex. G (S. Sideman Depo.) at 34:8–35:16.

Plaintiffs' counsel attempted to rescue Ms. Sideman by asking her if she believed she still had the same coverage under the Next Generation policy that she had always had, and she agreed. Ex. G (S. Sideman Depo) at 43:4–16  But that is irrelevant.  Whatever she thought, it had nothing to do with the statements made in the Offer Packet, which is the basis for her lawsuit.

Furthermore, Defendant notes that Federal Rule of Civil Procedure 11 states that pleadings are representations to the Court that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11.  Despite the fact they never reviewed any of the statements at issue in their complaint, Plaintiffs represented to this Court in their pleading:

> Without having been provided with the new Next Generation policy, ***and relying on FGI's misleading statements and omissions***, Plaintiffs paid the premium for the Next Generation policy with the expectation that the previous metal roof coverage for hail damage remained undiminished and unchanged from the coverage provided in the TFHP policy in effect prior to July 27, 2013.

(emphasis added).  Their claims should be dismissed.

### III.    Plaintiffs' Claims Fail Because FGI Made No Misleading Statements or Omissions

Even if Plaintiffs had reviewed the statements in their Offer Packet (which they admit they did not), summary judgment would still be appropriate because the statements at issue are not misleading as a matter of law.  The basic rule is clear: "In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA [or Insurance Code]." *See Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.— San Antonio 1998, no pet.) (quoting *Sledge v. Mullin*, 927 S.W.2d 89, 94 (Tex. App.—Fort Worth 1996, no writ)).

"[T]he insured has a duty to read and be familiar with the terms of his own insurance policy." *Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 792 (Tex. App.—Dallas 2011, no pet.) (citing *Heritage Manor of Blaylock Properties, Inc. v. Petersson*, 677 S.W.2d 689, 691 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)); *Manion v. Security Nat'l Ins. Co.*, No. 13–01–248–CV, 2002 WL 34230861, at *3 (Tex. App.—Corpus Christi Aug. 15, 2002, no pet.)).  Accordingly, even where the insured denies reading the policy, he is "bound by the terms of [his] policy and [is] charged with knowledge of its conditions and coverage."  *Id.* (citing *Heritage Manor of Blaylock Properties*, 677 S.W.2d at 691).

Accordingly, "[a] claim for misrepresentation cannot stand when the party asserting the claim is legally charged with knowledge of the true facts."  *Id.* at 798 (emphasis added).  Here, the Sidemans are charged with knowledge of the Metal Marring Exclusion, which they admit receiving.  Accordingly, there can be no misrepresentation or violation of the Insurance Code as a matter of law.

10

Nor is this a case in which any verbal representations about the scope of coverage were made.  Susan Sideman admitted, up until the aftermath of the hail storm in April 2016, she had not talked to Agent Michael Woods since 2010, when she had him add coverage for the roof under the prior insurance policy.  At no point after that did they discuss coverage, and particularly, Plaintiffs admit that they never discussed with their insurance agent Woods (or any representative of FGI or Texas Farmers), what the coverages and exclusions would be under the Next Generation Policy when it was offered to them in 2013.  Ex. G (S. Sideman Depo) at 39:25–40:4, 41:5–13.

**A.      None of the Facts the Sidemans Plead Is An Affirmative Misrepresentation That They Had Coverage For Metal Roofs Marred By Hail**

The Sidemans claim that Farmers committed "deception" by making the following "written misrepresentations" in their Offer Packet:

> (1) it stated that the Next Gen Policy was included in the package, but the entire Next Gen Policy was not included in the package (Complaint ¶ 12–14);

> (2) it advised them to contact their Farmers agent, review the items and conditions of the Next Generation policy, and included a Summary Policy comparison "which briefly summarizes some but not all of the differences between the TFHP and the Next Generation policies" (*Id.* ¶ 15);

> (3) it advised them to "review the policy forms and endorsements for details" because the "policy contract takes precedence over this summary comparison" (*id.* ¶ 16); and

> (4) a one-page Summary Plan comparison between the old and new policies "indicated" that the coverage for hail was "the same," *id.* ¶ 17.

These are not misrepresentations.  At worst for Plaintiffs, they are clear instructions to review the terms of the policy itself to learn the details of the coverage being offered.  At best for them, the "indication" in the Summary Plan comparison is ambiguous.

Yet an ambiguous statement regarding insurance coverage provides no basis for a misrepresentation claim under Texas law.  As the Fifth Circuit explains, a claim for misrepresentation of insurance coverage requires an "unambiguous, false statement."  *See Tolbert*

*ex rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 657 F.3d 262, 268 (5th Cir. 2011) ("Tolbert has failed to cite, and we have not found, any basis under Texas law for equating an *ambiguous statement about benefits* payable under a policy of insurance with an *unambiguous, false statement* or representation about the nature of those benefits.") (emphasis added).   The reason for the rule is because when faced with "an ambiguous description of benefits or coverage, a 'reasonably prudent person' could not conclude that there was coverage when the ambiguous document expressly states that the policy governs any conflicting description of coverage." *Id.* at 269–70.

And importantly, any possible ambiguity was cleared up in the Offer Packet itself by the inclusion of the Metal Marring Exclusion and its listing on the declarations page of Plaintiffs' new Next Gen Policy.  Complaint [#1] ¶¶ 11, 13; Ex. A at PL 0020 (Declarations Page); *id.* at PL 0043 (Metal Marring Exclusion Endorsement).  The exclusion clearly states: "However, we do insure . . . hail, except **marring** of **metal roof materials** . . ."  Ex. A at PL 0043  (emphasis in original).  And the declarations page likewise clearly states that the Metal Marring Exclusion applies if Plaintiffs accept the offer and purchase the new policy for the premium listed.  *Id.* at PL 0020.

If there is one document a prospective purchaser is going to review when offered a new insurance policy, it is the declarations page, which lists the amount of insurance being purchased, the cost, the deductibles, the property covered, and numerous other key facts.  *See id.*  Here, the declarations page lists which endorsements will apply, and the title of the endorsement at issue is crystal clear: Exclusion of Marring of Metal Roof Materials.  *Id.*  And of course the Offer Packet even included the actual endorsement itself, as Plaintiffs freely admit.  *Id.* at PL 0043; Compl. [#1] ¶¶ 11, 13.  Taking all of the Sidemans' allegations as true, their claim of misrepresentation or deception fails as a matter of law.

Moreover, the Sideman's purported ambiguity – that the "Summary Policy comparison" in the package "indicated" hail coverage would be "the same" between the old and new policies – is not supported by that document.  *See* Ex. A at PL 0040.  The comparison has a half-page chart at the top of the page titled "property perils" and says that placement of an "X" next to a peril "means that the policy includes this peril."  *See id.*  Indeed, the Sidemans' old and new policies both include coverage for the peril of hail.  The Marring Metals Exclusion says "we do insure . . . hail" before explaining the limitations to that insurance.  *See id.* at PL 0043.  And right below the chart in the Summary Policy comparison, on the very same page, are several disclosures including "[c]overage may not exist for a particular claim even if there is no exclusion," "the peril itself may limit coverage," whether a particular claim is covered "depends on a number of factors" including "all policy provisions," and that the document "summarizes some of the Property exclusions only and is not a detailed coverage guide."  *See id.* at PL 0040.

Even if the Sidemans had ***never*** been provided the applicable exclusion, the Summary Policy comparison could not sustain a claim for misrepresentation or deception.  All the more so under the facts here, where the same Offer Packet containing the comparison document also included a declarations page, stating the Metal Marring Exclusion applied, and containing an actual copy of the exclusion.  *Id.* at PL 0020, 0040, 0043.

### B.        Any Failure to Give the Sidemans A Copy of the Policy Is Irrelevant

The Sidemans make much of the fact they claim to have never received a complete copy of their new policy.  But the case law is clear that a misrepresentation claim cannot be supported merely with a policyholder's allegation that he never received a copy of the policy.

The Texas Supreme Court decided over thirty years ago that a policyholder's failure to read ***or receive*** a copy of a policy is irrelevant to misrepresentation or deception claims.  The case, notably, was filed by another homeowners insurance policyholder of Texas Farmers (the same

insurer that issued the Sidemans' Next Gen Policy).   In *Parkins v. Texas Farmers Insurance Company*, the homeowner alleged the following:

- Farmers represented it would "insure a dwelling he owned in the event of fire";

- He never received a copy of the homeowners policy;

- His coverage was renewed thereafter annually;

- Farmers issued him a policy which carried an exclusion that the premises covered must be owner-occupied; and

- Coverage was denied when the house burned because he had rented it.

645 S.W.2d 775, 775-76 (Tex. 1983).   Based on these facts, the homeowner claimed that Farmers Texas misrepresented his coverage and therefore violated the DTPA.

The Texas Supreme Court disagreed, holding that "Parkins nowhere shows that [Texas] Farmers ever assured him of coverage against fire loss ***under the circumstances present here*** or they would issue a particular kind of policy." *Id.* at 777 (emphasis added).   In other words, Parkins could point to no "unambiguous, false statement" that he would have coverage even if he ceased occupying the home.   *See Tolbert*, 657 F.3d at 268.   Farmers said it would provide insurance for a particular peril (fire) and it did so.

Similarly, the Sidemans have no "unambiguous, false statement" that they would be covered for marring to their metal roof by hail.   Just as in *Parkins*, Farmers said it would provide insurance for a particular peril (hail) and it did so—subject to the exclusion, which Plaintiffs admit they received.   As in *Parkins*, the fact policyholders have exclusions in their policy they have never reviewed, or even received, is irrelevant.   *Parkins*, 645 S.W.2d at 775-76.   Texas courts continue to enforce this rule.   *See, e.g., Nwaigwe v. Prudential Prop. & Cas. Ins. Co.*, 27 S.W.3d 558, 560

(Tex. App.—San Antonio 2000, pet. denied) (rejecting plaintiff's attempt to characterize his complaint as one of failure to disclose an exclusion from coverage).

From a plaintiff's perspective, the facts in *Parkins* were stronger than they are here because the policyholder never received a copy of the owner-occupied exclusion. Still, he was held to its terms and his misrepresentation and DTPA claims dismissed. Here, the exclusion was both provided in the Offer Packet and listed in the declarations page of the Sidemans' Next Gen Policy. While Texas law imputes knowledge of all the terms and conditions of a policy on policyholders whether they read or receive them or not, Plaintiffs have asserted a claim based on their own after-the-fact selective reading of only parts of the documents that were plainly placed before them. Texas law recognizes no such claim.

## IV.    Plaintiffs' Claims are Time-Barred

Plaintiffs assert two claims for violation of the Texas Insurance Code. The statute of limitations applicable to their claims states:

> A person must bring an action under this chapter before the second anniversary of the following: (1) the date the unfair method of competition or unfair or deceptive act or practice occurred; or (2) the date the person discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred.

Tex. Ins. Code § 541.162(a). The purported "misrepresentations" on which Plaintiffs base their claims were received by them on or about June 4, 2013. *See* Complaint [#1] ¶¶11, 13. They did not file this suit until January 13, 2017. Recognizing they failed to file suit within two years of the alleged wrongdoing, Plaintiffs argue they "had no reason, in the exercise of reasonable diligence, to discover prior to April 11, 2016 (the date of the hail storm) that FGI's representations, acts and/or omissions had occurred." *Id.* ¶ 36. But under the facts alleged, Plaintiffs' claims are barred by limitations as a matter of law.

Plaintiffs admit they received the Metal Marring Exclusion in 2013 as part of the very Offer Packet that contained the statements of which they complain. *See* Complaint [#1] ¶¶11, 13. They likewise admit they were "encouraged to and should take the time to review the items and conditions of the Next Generation policy." *Id.* ¶ 15. As a matter of law, a person exercising reasonable diligence would have discovered any misrepresentation in the Offer Packet in June 2013, when they received it. And subjectively, when Susan Sideman finally read the Metal Marring Exclusion for the first time during her deposition, she admitted she could understand it. Ex. G (S. Sideman Depo.) at 34:8–35:16.

First, to the extent there was a "misrepresentation" because the insurance policy itself was not contained in the Offer Packet, Plaintiffs certainly knew, or would have known that, the moment they opened their mail. Second, as discussed above, Texas law imputes on policyholders knowledge of all of the terms and conditions of their insurance policies. That means the Sidemans are charged as a matter of law with knowing in 2013 that their new policy contained an exclusion for marring. That is why numerous decisions hold that an insured's cause of action for misrepresentations about policy coverage accrues when the policy is issued. *See Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 748 (W.D. Tex. 2015) ("[Plaintiff's] state law claims based on representations made in August 2006 and June 2008 accrued at the latest on the original purchase date for the Policy [August 2008] and are barred by limitations."); *Khoei v. Stonebridge Life Ins. Co.*, No. H–13–2181, 2014 WL 585399, at *7 (S.D.Tex. Feb. 14, 2014) (claims that insurer misrepresented policy coverage in selling policy accrue when policy is issued); *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H–06–2736, 2009 WL 890398, at *16 (S.D. Tex. Mar. 30, 2009) (cause of action based on insurer's misrepresentation or failure to disclose in connection with sale of insurance policy accrues when policy is issued); *Rangel v. Progressive Cnty. Mut. Ins. Co.*, 333

S.W.3d 265, 269 (Tex. App.—El Paso 2010, pet. denied) (claims based on alleged misrepresentations concerning extent of insurance coverage accrued when plaintiffs purchased the policy); *Mauskar v. Hardgrove*, No. 14–02–00756–cv, 2003 WL 21403464, at *3 (Tex. App. — Hous. [14th Dist.] June 19, 2003, no pet.) ("Had [plaintiff] read the policies at the time he purchased them, he would have known that the policies were not going to meet his alleged pay-out expectations").

The Sidemans had all the information they needed in 2013 to determine whether they had any claims under the Texas Insurance Code—the Offer Packet, along with the new declarations page and the copy of the Metal Marring Exclusion, made it clear that marring of a metal roof by hail was excluded from the hail coverage.

## V.    Statements to TDI Are Neither Deceptive Nor Relevant

Finally, the Sidemans argue that FGI did not disclose to TDI that the Metal Marring Exclusion would apply to homes with existing metal roofs if another homeowners policy form was discontinued and the policyholder was offered a Next Generation Policy.  The statements at issue are as follows:

> This endorsement will be placed onto new business policies, or existing customers who have a non metal roof and switch to a metal roof, as of the effective date of this project, which is March 1, 2012.
>
> This form will not attach to any existing policies with metal roofs. However if an existing customer with a metal roof changes the type of metal roof that they have after the implementation of these forms, for example, going from a copper roof to a sheet metal roof, then this form will also be placed on those policies.

Orig. Pet. ¶28.  Plaintiffs' claims that FGI made misrepresentations to TDI are premised on the use of selective excerpts.   When the statements are placed in context, there are no misrepresentation as a matter of law.

As noted above, Texas Farmers had two separate insurance products on the market – the Family Home Policy and the Next Generation Policy.  Under Texas law, every insurance policy form must be separately reviewed and approved by the Texas Department of Insurance.  *See* Tex. Ins. Code § 2301.006.  These are known as "form filings."  Hence, every Family Home Policy form and endorsement had to be reviewed and approved separately from every Next Generation Policy form and endorsement.

The letter that Plaintiffs claim contains misrepresentations to TDI opens as follows:

> On behalf of Texas Farmers Insurance Company and Farmers Insurance Exchange, we respectfully submit for your review and approval a new Homeowners form *for our existing Next Generation Homeowners products.*

Ex. J (TDI Form Filing Letter) at FGI000473 (emphasis added).  This letter was the start of a lengthy review process that ultimately ended in TDI approving the use of the Metal Marring Exclusion for Next Generation Homeowners products.  ("Product Name : NGHO").  At the time of this submission, *the Sidemans did not have a Next Generation Policy*.  Accordingly, when the letter discusses how "existing policies" will be treated, it is of course referencing existing Next Generation Policies.  This is not a genuine issue of material fact.  There is *no representation made or discussion of Family Home Policies or policyholders*.  None of the statements made to TDI concern or apply to the Sidemans.  And TDI never asked about Family Home policyholders or the Sidemans.  The statements at issue were not misleading as a matter of law.  Of course, the Sidemans never reviewed or relied on any of these statements either. Ex. G (S. Sideman Depo.) at 24:9–25:6.

It was nearly two years after the TDI letter of which Plaintiffs complain that the Sidemans were first offered a Next Generation Policy.  The terms and conditions of that policy were different from their prior Family Home Policy.  Plaintiffs' offer was conditioned on the inclusion of the

Metal Marring Exclusion, which had been approved by TDI for use by Texas Farmers without condition.

While Plaintiffs never say it, they seem to imply that if TDI had known that Texas Farmers might in the future offer the Next Generation Policy with the Marred Metal Roof endorsement to customers who in 2012 had other insurance policies, TDI would not have approved the endorsement.  Discovery is closed and there is no proof to support such a position.  What TDI would or would not have done under any given set of different facts is purely speculative.

### CONCLUSION

FGI is entitled to summary judgment and this case presents no genuine issues of disputed, material facts.  Plaintiffs' claim accrued in 2013, and is time-barred.  They admit they received the Metal Marring Exclusion, and even if they had not, they are charged with knowledge of its terms. They admit they never read any of the statements their lawyers assert were misleading, and so cannot show reliance or causation.  The TDI filings were accurate, and also not relevant to the policy offer made to the Sidemans nearly two years later.

Respectfully Submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Adam T. Schramek*_____
M. Scott Incerto (State Bar No. 10388950 )
Adam T. Schramek (State Bar No. 24033045)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Tel: 512.474.5201
Fax: 512.536.4598
scott.incerto@nortonrosefulbright.com
adam.schramek@nortonrosefulbright.com

COUNSEL FOR DEFENDANT FARMERS
GROUP, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2017, in accordance with the Federal Rules of Civil Procedure, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Adam T. Schramek*
Adam T. Schramek