UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

F I L E D

NOV 1 3 2017

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
           DEPUTY CLERK

SUSAN SIDEMAN and MARK SIDEMAN,   )
                                  )
           *Plaintiffs*,          )
                                  )
v.                                )   Civil No. 5:17-CV-23-OLG
                                  )
FARMERS GROUP, INC., a Nevada     )
Corporation,                      )
                                  )
           *Defendant*.           )

## ORDER

This case is before the Court on Defendant's Motion for Judgment on the Pleadings (docket no. 10). The Court finds that Defendant's motion should be granted.

## Background

This case arises from hail damage to a residential metal roof resulting from a storm that occurred on April 11, 2016. Docket no. 1 at ¶ 19. Defendant—not itself a licensed insurance provider—engages in some management functions for homeowners insurance policies issued by Texas Farmers Insurance Company, a Texas-based entity licensed by the Texas Department of Insurance (TDI), from which Plaintiffs purchased a homeowner's insurance policy that covered the damaged residence. Docket no. 1 at ¶¶ 3-6. Plaintiffs' insurance claim arising from the April 2016 storm was denied on the basis of a "marring exclusion"—an exclusion that Plaintiffs contend Defendant deceptively added to Plaintiffs' coverage when purchased a new policy in July 2013 following the nonrenewal of their previous coverage. Docket no. 1 at ¶¶ 11-18. Plaintiffs allege that Defendant sent them and their insurance agent a packet summarizing the new policy, but failed to include the new policy itself, although the summary packet incorrectly stated that the full policy was included. Docket no. 1 at ¶¶ 11-15. Although the documents that

Defendant sent to Plaintiffs included a TX-184 "Exclusion Of Marring of Metal roof Materials" (the marring exclusion)[1]—the exclusion under which their April 2016 claim was denied—Plaintiffs allege that the summary comparison of the two policies also included in the packet inaccurately indicated no change to the coverage for hail damage from their previous policy—a misrepresentation that they claim they relied upon when renewing their coverage under the new policy. Docket no. 1 at ¶¶ 13, 17. Plaintiffs also allege that Defendant misrepresented the applicability of the marring exclusion to the Texas Department of Insurance (TDI) in order to secure TDI's approval for the exclusion. Docket no. 1 at ¶¶ 27-32. Plaintiffs assert misrepresentation claims under Sections 541.052 and 541.061 of the Texas Insurance Code, and allege that, since reasonable diligence would not have uncovered the alleged misrepresentations until April 2016, the two-year statute of limitations found at Tex. Ins. Code § 541.162(a) should not bar their claims. Docket no. 1 at ¶ 34-36, 38.

In its motion for Judgment on the Pleadings, Defendant argues that Plaintiffs' claim should be dismissed because their pleading acknowledges their receipt in June 2013 of the marring exclusion, and because their claims are time-barred under Tex. Ins. Code § 541.162(a). In response, Plaintiffs argue that their claim is viable notwithstanding their receipt of the marring exclusion, since the terms used to describe the exclusion were only defined within the policy, which they did not receive. Docket no. 12 at ¶ 9. Plaintiffs also argue that knowledge of the policy terms they agreed to cannot be imputed to them since they did not receive the policy. Docket no. 12 at ¶ 14. Plaintiffs also argue that tolling of the statute of limitations is a factual question that cannot be decided at the pleading stage, and that the rule of discovery should apply and preclude dismissal of their claims as untimely since they brought their claim within two

---

[1] Although Plaintiffs allege that the marring exclusion was included in the packet that they received in June 2013, they allege that the packet that their insurance agent received did not include the marring exclusion, but was otherwise identical. Docket no. 1 at ¶ 13.

years of discovering that the metal marring exclusion had reduced the value of their coverage. Docket no. 12 at ¶¶ 20-23.

### Legal Standards and Analysis

The standard for a motion seeking judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as for a motion to dismiss under Rule 12(b)(6): A claim is subject to dismissal unless it contains sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face." *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009). Judgment on the pleadings is appropriate in cases where "the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts[,]" as well as materials attached to the pleadings and "documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Machete Productions, LLC v. Page*, 809 F.3d 281, 287 (5th Cir. 2015); *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013), *cert. granted, judgment vacated on other grounds*, 134 S. Ct. 2900 (2014); *see also* 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.) (Analysis of merits under Rule 12(c) is based on review of "the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice."). In reviewing a motion for judgment on the pleadings, the Court must "accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the nonmovant." *Page*, 809 F.3d at 287.

The Court agrees with Defendant that, considering the facts that are not in dispute, Plaintiffs have failed to state a plausible claim to relief. An insurance policy is a contract, and, in general, the parties who enter into one are bound by its terms regardless of whether they have actually read or understood them. *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex.

App.—El Paso 1999, no pet.); *WMS, LLC v. Allied Prop. & Cas. Ins. Co.*, 244 F. Supp. 3d 567, 573 (W.D. Tex. 2017) ("an insured has a duty to read the policy and, failing to do so, is charged with knowledge of the policy terms and conditions." (internal quotation marks and citation omitted)). "Under Texas law, an insurance agent does not have a legal duty to explain the terms and conditions of an insurance policy." *Resendez v. Scottsdale Ins. Co.*, 1-15-CV-1082 RP, 2016 WL 756576, at *3 (W.D. Tex. Feb. 26, 2016) (citing *Insurance Network of Tex. v. Kloesel*, 266 S.W.3d 456, 467–68 (Tex. App.–Corpus Christi 2008, pet. denied)). "[A]bsent some affirmative misrepresentation of the terms of coverage by an insurer, an insured's mistaken belief concerning the extent of coverage is not grounds for a misrepresentation claim[,]" either under common law, the DTPA, or the Texas Insurance Code. *Resendez*, 2016 WL 756576, at *3 (collecting cases).

It is not disputed in this case, that, in June 2013, Defendant sent Plaintiffs a packet that included a "Notice of Non-Renewal," a "New Policy Offer and Non-Renewal" letter, a copy of the TDI Consumer Bill of Rights for Homeowners, Dwelling and Renters Insurance, a Summary Policy Comparison, the Exclusion of Marring of Metal Roof Materials pursuant to which Plaintiffs' April 2016 claim was denied, and various other endorsements, notices, and disclosures. Docket nos. 12-1; 12-2 at 2-25. Plaintiffs argue that the Summary Policy Comparison was misleading in violation of Tex. Ins. Code §§ 541.052 and 541.061 because the summary indicates that both Plaintiffs' previous policy and the replacement policy included coverage for the peril described as "hail." Docket nos. 1 at ¶ 17; 12-2 at 22. However, the parties do not dispute that both policies do in fact insure against the peril of hail, or that the exclusion of marring of metal roof materials, which reduces the scope of hail coverage under the replacement policy, was included with the June 2013 packet and informed Plaintiffs that "we do insure . . . hail, except **marring** of **metal roof materials,** other than where hail causes a distinct and demonstrable actual hole or opening in the **metal roof materials,** or that results in the failure of

the **metal roof materials** to perform its intended function." Docket no. 12-2 at 22, 25 (emphasis in original). The marring exclusion also informed Plaintiffs that "[t]his endorsement is part of your policy" and that "[i]t supersedes and controls anything to the contrary." Docket no. 12-2 at 25. Moreover, the summary that Plaintiffs contend was misleading advised Plaintiffs that it is a "brief summary" of "some of the differences between these policies"; is "not meant to be a comprehensive list of all differences"; that customers should "review the policy forms and endorsements for details"; and that "[t]he policy contract takes precedence over this summary comparison." Docket no. 12-2 at 20. Accordingly, the Court finds that, notwithstanding Plaintiffs' conclusory pleadings to the contrary, the Summary Policy Comparison was neither ambiguous nor misleading.

Plaintiffs argue that the marring exclusion itself was ambiguous or misleading because it did not include a definition of the term "marring," a definition that Plaintiff asserts "is contained in the full policy and necessary to understand the application of the endorsement to specific covered perils." Docket no. 12 at ¶ 9. Plaintiffs argue that without such a definition, it was "impossible for [Plaintiffs] to understand the effect of the included exclusion." Docket no. 12 at ¶ 7. However, in interpreting insurance policy documents, courts "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015), *reh'g denied* (Sept. 11, 2015). Where multiple parties "present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous" and "must resolve the uncertainty by adopting the construction that most favors the insured[.]" *RSUI Indem. Co.*, 466 S.W.3d at 118. Although Plaintiffs contend that the use of the term "marring" in the marring exclusion was ambiguous to the point of total incomprehensibility, they have not suggested any other reasonable interpretation that could be assigned to the term given the language of the

exclusion. The exclusion itself distinguishes the excluded marring from instances "where hail causes a distinct and demonstrable actual hole or opening . . . or that results in the failure of the metal roof materials to perform its intended function." Docket no. 12-2 at 25 (internal emphasis omitted). As a matter of law, language in an insurance policy is ambiguous "only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *RSUI*, 466 S.W.3d at 119 (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (1951)). The Court agrees with Defendant that, when read in light of common usage, the effect of the marring exclusion, and the meaning of the term "marring," is not genuinely uncertain, and the exclusion language is therefore not ambiguous. Given the unambiguous language of the exclusion, the Court further finds that providing the exclusion to Plaintiffs without also providing the full policy was not "misleading" within the meaning of Tex. Ins. Code §§ 541.052 or 541.061, particularly since the exclusion was identified as "part of your policy[,]" which other documents in the packet encouraged Plaintiffs to review in full.

For similar reasons, the Court finds that Plaintiffs' claim based on the use of the name of their insurance agent, Michael Woods, in the June 2013 packet is not viable. Docket nos. 1 at ¶ 15; 12 at ¶ 10. Plaintiffs have produced evidence that the change documents "were drafted and sent by [Defendant]" and that Woods personally "did not have any input into the document[.]" Docket no. 12-3 at ¶ 5. Plaintiffs allege that it was therefore deceptive for the packet to have been sent using Woods's return address, and for it to have included a letter and a notice signed using Woods's name that invited Plaintiffs to, "[i]f you have any questions regarding the changes made to your policy or any other insurance matter, please contact me[,]" and to "[p]lease give me a call . . . to review your policy." Docket nos. 12-2 at 1, 8, 35. Liability under Sections 541.052 or 541.061 for misrepresentation of the scope of coverage requires "affirmative

misrepresentation of the terms of coverage by an insurer[.]" *Resendez*, 2016 WL 756576, at *3. Neither the use of Woods's return address or the use of his name in the signature block of the notice and letter included with the June 2013 packet amount to an affirmative representation of any fact—and what Plaintiffs argue is the misleading implication that Woods personally prepared the documents contained in the packet has no bearing on the terms of coverage. Nor can Plaintiffs' claim be sustained upon speculation that, contrary to the statements in the notice and letter supposedly bearing Woods's signature, he would not have been able to discuss the terms of the replacement policy with them because it had not been provided to him. Indeed, Plaintiffs' pleading indicates that, when Plaintiffs did contact Woods in April 2016 to ask him about the denial of their claim, he retrieved information, which he had not previously had, about the marring exclusion. Plaintiffs' speculation that Woods might have failed to describe the marring exclusion to them if they had asked him about it in June 2013—rather than obtaining the policy documents before attempting to describe their contents to Plaintiffs—cannot form the basis for a viable misrepresentation claim. Moreover, as noted above, "an insurance agent does not have a legal duty to explain the terms and conditions of an insurance policy." *Resendez*, 2016 WL 756576, at *3.

Plaintiffs claim that the packet that Defendant provided to them contained the false representation that it contained the policy itself, docket no. 1 at ¶ 14, but this misrepresentation would have been apparent at the time that Plaintiffs received the packet in June 2013. Thus, even assuming that such a misstatement could be actionable under Tex. Ins. Code §§ 541.052 or 541.061, any claim based upon it would be time-barred in this case under Tex. Ins. Code § 541.162(a)(2).[2]

---

[2] Plaintiffs cite a Texas Court of Appeals opinion for the proposition that an "insurer's failure to supply [the] insured with [a] complete copy of [the] policy was unconscionable under

Finally, Plaintiffs' complaint also asserts misrepresentation claims based on statements that Defendant made to TDI in 2011 regarding the addition of marring exclusions to its plans. Docket no. 1 at ¶¶ 27-30. Plaintiffs allege that Defendant obtained TDI approval of the exclusion based on representations to TDI that it "will be placed onto new business policies, or existing customers who have a non metal roof and switch to a metal roof" and "will not attach to any existing policies with metal roofs" unless the policyholder changed the type of metal roof that they had. Docket no. 1 at ¶ 28. Plaintiffs allege that, although they did not fall within any of these categories, Defendant nonetheless included a marring exclusion in their new coverage. Docket no. 1 at ¶ 30. However, Plaintiffs' pleading also shows that, well after TDI's 2011 approval of the addition of the marring exclusion, the policy term of their previous homeowner's insurance policy concluded, the policy was not renewed, and Plaintiffs entered into a new policy that did contain a marring exclusion. Docket no. 10 at 6. n.3. The pleading itself thus shows that, as of July 2013, Plaintiffs were not holders of "existing policies [insuring properties with] metal roofs[,]" but that their coverage was a new policy. The Court notes that, in their briefing opposing Defendant's motion, Plaintiffs have not disputed Defendant's argument that "there were no misrepresentations made to TDI[,]" and indeed make no reference whatsoever to their TDI-based misrepresentation claims. Dismissal at the pleadings stage is appropriate where, as here, "the facts stated in plaintiff's complaint affirmatively negate its cause of action." *Long*

---

the DTPA[,]" docket no. 12 at ¶ 17, but the Court notes that in that case, unlike this one, the insured "repeatedly requested a copy of her statements and policy in letters to" the insurer, and that "[t]he requests were just as repeatedly ignored while [the insurer] continued to insist on [the insured's] adherence to the terms and conditions of a policy she did not have." *Aetna Cas. & Sur. Co. v. Garza*, 906 S.W.2d 543, 553-54 (Tex. App.—San Antonio 1995, writ dism'd by agr.). Plaintiffs also point out that state law now requires delivery of homeowners' policies to the insureds or their agents, generally within 30 days of the policy's effective term. Docket no. 12 at ¶ 16 (quoting Tex. Ins. Code § 525.002). However, Plaintiffs also concede that this law, which took effect on September 1, 2015, is not relevant to their claims because it was not in effect when Plaintiffs' policy term began in July 2013. Docket no. 12 at ¶ 16.

*Range Sys., Inc. v. NTN Wireless Communications, Inc.*, 3-03-CV-0598-L, 2003 WL 21283194, at *1 (N.D. Tex. May 28, 2003).

The Court therefore concludes that Plaintiffs have failed to state any viable cause of action, and that Defendant is therefore entitled to judgment on the pleadings.

## Conclusion and Order

It is therefore ORDERED that Defendant's Motion for Judgment on the Pleadings (docket no. 10) is GRANTED.

It is further ORDERED that Defendant's Motion to Exclude Expert Testimony of Art Boutin (docket no. 19), Plaintiffs' Motion to Compel Depositions (docket no. 23), and Plaintiffs' Motion for Continuance of Discovery Deadline (docket no. 24) are DENIED as moot.

SIGNED this 13 day of November, 2017.

ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE